UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No.: 20-CR-274 |
| V. | ) | Honorable Lawrence E. Kahn |
| | ) | Senior U.S. District Judge |
| JHAJUAN SABB, | ) | Northern District of New York |
|     Defendant. | ) | SENTENCING MEMORANDUM |

**DEFENDANT'S SENTENCING MEMORANDUM**

**I.**   **Procedural History**

The defendant, Jhajuan Sabb, is scheduled for sentencing before this Honorable Court on February 17, 2021 at 11 a.m. On November 5, 2020, Mr. Sabb pled guilty, pursuant to a plea agreement, to a single count Information. Specifically, he pled guilty to a single count of Interstate Threat to Injure Another Person, in violation of 18 U.S.C. § 875(c). Mr. Sabb has been detained since his arrest on June 7, 2020. By the day of his sentencing, he will have spent a total of 8 months and 10 days in custody.

**II.**   **Requested Sentence**

Mr. Sabb, by and through his undersigned counsel, respectfully requests a sentence of time served with one year of supervised release, and that no fine be imposed. He also asks that a recommendation be made for him to be placed in a reentry center as soon as practicable to address a number of his reentry needs addressed below.

**III.**   **Sentencing Framework**

Congress has set forth specific factors the Court should consider before imposing a sentence. Title 18 U.S.C. § 3553(a) directs the Court to impose a sentence sufficient, but not greater

than necessary. In determining the particular sentence to be imposed, the Court shall consider the following:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) The need for the sentence imposed—
>     a. To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     b. To afford adequate deterrence to criminal conduct;
>     c. To protect the public from further crimes of the defendant; and
>     d. To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) The kinds of sentences available
> (4) The kinds of sentence and the applicable sentencing range;
> (5) Any pertinent policy statements;
> (6) The need to avoid unwarranted sentence disparities;
> (7) The need to provide restitution to any victims of the offense.

*See*, 18 U.S.C. § 3553(a).

## **IV.**   **Sentencing Guideline Calculation & Objections**

The Presentence Report calculates Mr. Sabb's total offense level as being a 6 and his criminal history category as being a III. Presentence Report (PSR) ¶ 59. The corresponding guideline range of imprisonment is 2 to 8 months. *Id*. Defense does not object to this guideline range or the underlying offense level and criminal history category calculations.

Mr. Sabb respectfully asks that Recommended Special Condition of Supervision #1 not be imposed in his case. While he has a significant history with the use of marijuana, he has indicated that it is not difficult to stop using when he wants to. PSR ¶ 49. The mental health programming requirement indicated in Special Condition #2 likely will be sufficient in addressing any issues relating to substance abuse as mental health and substance abuse issues are often co-occurring. Further, given society's changing view of marijuana (i.e. it being largely decriminalized in New

York), this should be further reason not to require his participation in substance abuse treatment on top of mental health treatment.

## V. The Offense Conduct

This offense stems from Mr. Sabb's conducting of a live-cast video on the social networking platform, Facebook. For reference, these live-cast videos, called Facebook Live videos, are broadcast over Facebook and can be viewed in real time by other users who are friends with the broadcaster or who otherwise follow the broadcaster's postings.

In Mr. Sabb's case, he posted a video, which was recorded by a Troy Police officer and subsequently disclosed to federal authorities. What was actually recorded (and as described in the PSR) consisted of three short videos that combined for less than three minutes in total length. At any given point during these three recordings, at most 10 users were watching. Through much of the recording, anywhere between 4 to 8 users were viewing the live video.

The comments that Mr. Sabb made during this live video, while wrong, were borne out of frustration and anger over the murder of George Floyd. They were borne out of his own experiences as a young African-American man with the police, and the general experiences of the African-American community in Troy, which consists of many, if not most, individuals who view the local police not as a force for good, but as a vestige of oppression and as a group of people to fear. Nonetheless, Mr. Sabb recognizes the wrongness of his words and will never make this mistake again.

However, it should be noted that Mr. Sabb's comments never resulted in any kind of violence. The protest that occurred within days of his statements did not devolve into violence.[1] Mr. Sabb's words did not result in the storming of Troy City Hall. His words did not result in the storming of a police station or the destruction of police vehicles. No government officials or police officers were under immediate threat of violence as a result of Mr. Sabb's words. Nor did his words inspire others to conspire to commit such acts. No instrumentalities of violence were found at or in proximity to the protest that proceeded Mr. Sabb's statements. Indeed, the protest in Troy that occurred just after Mr. Sabb's comments went off peacefully and without incident.[2]

Mr. Sabb, himself, never intended nor actually carried out, any actual violence as a result of his words. Indeed, on the day and time of the protest, Mr. Sabb was working at Home Depot. When he learned that law enforcement officers were looking for him, he ended his shift early and returned to his home. Upon returning home he encountered a police response that was already in progress, which included an armored vehicle, and perhaps a dozen or more local and federal law enforcement officers: many of which dressed in what can only be described as full tactical gear, which included the carrying of assault rifles.[3] Mr. Sabb never ran from the scene, became hostile with any of the officers nor did anything that could be construed as uncooperative. Upon a search of his person and his home, no instrumentalities of violence were found. Mr. Sabb's conduct is limited to the words he chose to broadcast.

### **VI.    History and Characteristics**

---

[1] See The Times Union, *Thousands rally Sunday in Troy, Saratoga Springs*, available at: https://www.timesunion.com/news/article/Thousands-rally-in-Troy-Saratoga-Springs-Sunday-15323098.php.

[2] *Id*.

[3] See, Facebook page: Sidewinder Photography, available at: https://www.facebook.com/sidewinderproductions/posts/4133061100067592 (last viewed 2/10/21 at 7:51 p.m.).

At the time that Jhajuan Sabb committed the crime for which he is to be sentenced, he was just 20 years old. While he has already had a number of run-ins with law enforcement in his young life, this history may be best explained through his long-term dealings with mental health that began at a very young age. When he was only 13 years of age, Mr. Sabb was placed in an inpatient setting at Four Winds Psychiatric Center for a period of two weeks. PSR ¶ 46-47 He had previously been diagnosed with Attention Deficit Hyperactivity Disorder and Bipolar Disorder at the age of 9. PSR ¶ 45. As evidenced by his mood difficulties, placements at Four Winds as well as Northeast Parent and Child, struggles in school, and early contact with law enforcement, Mr. Sabb struggled enormously in the short life that he has so far had.

However, over the past couple years, Mr. Sabb has attempted to get his life on track. Until the present incident, he had not been in trouble since December of 2017. PSR ¶ 34. He had developed a talent for writing, which manifested in the form of musical lyrics. Further Mr. Sabb was maintaining a long-term romantic relationship with his girlfriend, Jaquaria Robinson.[4] At the time of Mr. Sabb's arrest, Jaquaria was pregnant with their first child. PSR ¶ 41. Mr. Sabb had also managed to find employment at Home Depot to help support the couple's livelihood. PSR ¶ 54.

The current case against Mr. Sabb has impacted him greatly. It has led to both he and Jaquaria's loss of their apartment. It has led to the loss of Mr. Sabb's employment and ultimately, it has led to the destruction of his relationship with Jaquaria. What has occurred here, has not just impacted Mr. Sabb, but has impacted his family and those that he has cared about.

Mr. Sabb also recognizes the importance of getting on the right track upon completion of his custody. He no longer has a residence of his own. He no longer has a job. He also understands

---

[4] Note: the PSR in ¶¶ 41 & 42, refers to Jaquaria's last name as "Robertson," however her correct last name is "Robinson."

5

that he is likely to be involved in mental health treatment as part of any period of supervision he is given. As such, Mr. Sabb hopes that a placement in a reentry center, such as the Horizon House, may afford him the opportunity to obtain these necessities of release so to further ensure his successful reintegration into society.

### VII. Conclusion

As stated previously, Mr. Sabb's guideline range is 2-8 months, which means he has already been detained just beyond the top end of his guideline range. The conduct in this case did not result in any actual commission of violence against any person or entity, nor the intent to do the same. This information combined with Mr. Sabb's young age and the difficulties he has experienced in his life all suggest that the requested sentence of time served is the most appropriate under the circumstances. As such, Mr. Sabb respectfully requests a time served sentence, 1 year of supervised release and no fine be imposed.

Dated: February 10, 2021

LISA PEEBLES
Federal Public Defender

By: *Michael P. McGeown-Walker*
Michael P. McGeown-Walker, Esq.
Assistant Federal Public Defender
Bar No.: 520776
39 North Pearl Street, 5th Floor
Albany, New York 12207

## CERTIFICATE OF SERVICE

On the below date, the sentencing memorandum was filed with the Court and delivered via ECF/email to the following parties:

*AUSA, Michael Barnett*

Dated: February 10, 2021                                              */s/ Michael P. McGeown-Walker*
                                                                                                       Michael P. McGeown-Walker, Esq.
                                                                                                       Assistant Federal Public Defender